I'll call the calendar and will council indicate your presence. Boyler v. City of Lackawanna. James Ostrowski for the Appellant, Your Honor. Morning. Julie Afterford for the Appellant. Morning. United States v. Gemayor. Melissa Toohey for Mr. Gemayor, the Appellant. Also Julie Afterford, Governor. Morning. Hemann v. Berryhill. Peter Gordon for the Plaintiff, for Hemann. Ben Lieberheim on behalf of Nancy Berryhill. Morning. Conte v. Bergesen is on submission. We'll hear the first case, Boyler v. City of Lackawanna. Good morning. May it please the Court, I'm James Ostrowski. I represent Scott Boyler. He's the Plaintiff Appellant in the case. The first point I want to make is that without getting into what is admittedly some fairly complicated federal law and complicated qualified immunity doctrine, I don't think that it was ever shown that the simple elements of the statute were met. Specifically, the statute requires that the message be transmitted or delivered. There was a prior case cited by counsel which I distinguished because that was People v. Munn. The language had changed somewhat. I think the broad interpretation that the district judge gave to the statute is not warranted by just the plain language of the statute. Why is that the case, sir? If someone writes an open letter to a newspaper, a letter to the editor, is that any different? I totally agree, Your Honor. I was about to make the point that not only does the judge's interpretation apply to any Internet post pretty much anywhere on the planet, but any newspaper, and why not a newspaper in Australia? I just don't think that that's within the meaning of the statute because it talks about transmitting or delivering a message. In fact, I think it's very telling . . . Does that suggest that that is transmitting a message under the statute? I just don't think it is. Obviously, the court will make that determination, but I think it's just the plain . . . I mean, every statute has to be interpreted, particularly a criminal statute, based on the plain language. I think it just stretches those terms beyond credulity. Transmitted means transmitted to the person who will be annoyed or harassed? Yes, that's absolutely our . . . But doesn't that add words to the statute? I don't think it does. I think that delivered or transmitted, I think just the plain English meaning of those words . . . I'm just urging the court to find that for the court to have found that an Internet post, and the gentleman wasn't even on the Internet, somebody had to show it to him, and following the chief judge's point, really any newspaper, and really any newspaper almost anywhere, somehow that would violate aggravated harassment. I think that would create tremendous problems for the First Amendment because lots of nasty things are said about lots of people in newspapers and on the Internet, and I just . . . there's no case that supports that, other than the Patcherell case, which did come before the court, and I spent a considerable amount of time, I don't normally read law review articles, but that issue wasn't really litigated in the court below, and that language is either dictum, or as I argue in the brief, not even dictum, but that's a little bit above my pay grade, but I don't think that case establishes it. The other thing is that . . . What about some of the posts were directed at him, at the officer, Leo? He says, why don't you sell your house and move, you're disgusting, et cetera, et cetera. Isn't that a communication to him? Well, it may be directed at him, Your Honor, and in fact, I wanted to just call the court's attention to the record at . . . this is the decision of the court, document thirty-four, and I'm quoting page fourteen, and I think it's very telling that the district judge, who was reaching the conclusion the opposite of what I'm arguing to the court, but used the language, plaintiff directed these communications at Captain Leo. Maybe he did, but he didn't transmit or deliver them, and this is a criminal statute. People who aren't lawyers or judges have to be able to read the statute and comply with it. I think that the court, I think, inadvertently made our argument for us. When the district judge was describing what he did, the district judge did not use that language. He used a different word, which I don't think is illegal under the statute. Yes, Your Honor. Could I just move on to another point to sort of cut to the chase, at least as I understand it? If you're going to avoid summary judgment on the free speech claim, my understanding is that you have to have evidence showing either that the defendant silenced your client or that the defendant's actions had, and quoting from Williams v. Town of Greenburg, had some actual non-speculative chilling effect on his speech. I've been trying to find any evidence in the record to show that his arrest had any real chilling effect on the speech. From what we can see, as he himself, as Boiler, your client, himself testified in his deposition, he continued to post about the city and Captain Leo. The printouts of his website show that he was saying the same kinds of things that he'd always been saying before he was arrested. So where's the chilled speech? Where's the impact on him in terms of his speech? I guess I'm going to take refuge in the fact that that's an issue of fact for a jury. But let me throw this out to you, Your Honor. He was certainly chilled when he was dragged into police headquarters and verbally abused. So at a minimum, there was a period of time there. And he was incarcerated for a day or two, whatever the record shows. But it was more than de minimis booking and released. And it's very difficult to speak freely when you're in the holding center. So just as an arrest, and I'm sure this court has held many times, doesn't require a long period of time to be illegal. I don't know why a First Amendment claim would say, well, you were prevented from speaking for two days, but that's not significant enough. I don't think this court would so hold. Getting back to the statute, I know my time is running out. But I also think, and this relates to the First Amendment, that the statute requires intent. What is this gentleman's intent? Has he established subjective intent for probable cause to arrest him, though? I'm sorry, Your Honor, please. For the arrest of him, though. The officers need to demonstrate his subjective intent to have probable cause for the arrest under that statute? I think it's an element of the statute, Your Honor. Absolutely. And his intent was clear. He was criticizing government officials under the First Amendment. The petition clause, the speech clause, everything but the, I guess, he wasn't assembling religion, but several clauses. The test for a police officer is an objective test. Would an objective police officer think that he had violated the statute, even the intent part of it? Isn't that right? I don't think so. I think a police officer, Your Honor, is sworn to uphold the First Amendment and is charged with some basic knowledge of the First Amendment, or else all of our rights are in jeopardy. And there's no way that this intent was not an intent to speak freely under the First Amendment. And just my final, my seconds are dwindling. As far as the free speech claim, there's simply no case in qualified immunity, which is a doctrine that gives me the headache over the years. I try my best. But there's simply no precedent cited anywhere that political speech has been prosecuted under this or other statutes. So I think that the court should take that into consideration. Thank you. You have two minutes. Thank you. May it please the court. I'm Julie Apter. I represent the appellees, the city of Lackawanna, Captain Leo and Detective Lasko. Addressing the points of appellant, we disagree with his position that it hasn't been addressed regarding free speech because it's our position that his postings on the Internet are not pure political speech. As both the underlying city court judge as well as the district court judge found, the postings were actually directed to Captain Leo. They were threatening. Captain Leo testified that he felt threatened, harassed. And it's our position as we set forth in our brief that this is not political speech. It's targeted to this specific captain. And we don't feel that he has any constitutional protection based upon what he posted on the Internet. Is it a problem for your argument that the Facebook post that one of them that you rely on, it seems somewhat heavily, appeared 19 months after the arrest itself? I mean, you put a lot of stock on a boiler stating, and I quote you meaning Captain Leo and your disgusting pig pen at Parasite Hall are going to pay for your crime. And that boiler was going to, quote, enjoy punishing you and your gang in every conceivable way. Those were posts made after the arrest, 19 months after the arrest. That is correct, Your Honor. However, we were also relying on the testimony of the captain where these posts were brought to his attention. So it is our position that there were similar posts. We just didn't have the actual paper copies of them. And there were similar threatening comments because those were the types of comments that Detective Lasko sat down with Leo and looked at that justified filing the charges. What's your best statements from your point of view? If you exclude the statements that were made 19 months after the arrest, which statements would you have us look at? That's a very good question, Your Honor. I don't believe in the record. The captain specifically stated what the statements were. He did testify that he observed him with the detective and felt that they were threatening. It's my understanding that the statements were similar where he called them the derogatory names and threatened that he was going to go after his family. What about in the information? In the information sheet? There are specific statements in the information. In the information sheet. A134, right? You're right, Your Honor. They did talk about their harassing comments on the information sheet. I'm sorry. As we indicated, it was the position of the officers. Is it 134? Right, I have it here. It really goes to the one comment where he stated, you know, why don't you sell your house and you ain't seen nothing yet. I'm harassing him now. It's in there too, right? Right, and he's saying I'm harassing him now, and then he continued to state it. He said, oh, poor Captain Pigfucker is crying and complaining. I'm harassing him now. Why don't you sell your house and move, you disgusting pigfucker? You ain't seen nothing yet. And then after that, these charges were filed. He just continued. So in our opinion, this is- He wasn't picked up until April, right? Right. In January? And the reason why he wasn't picked up until April, and we pointed it out in our brief, was that he was no longer residing in Lackawanna because he's a convicted sex offender. And his home was by a school, so he moved to a different jurisdiction. And by the time they located him, it was the other jurisdiction that arrested him and then brought him to Lackawanna. The warrant issued on the basis of this complaint in January. Correct, correct. And then he was arrested in April once he was located in Angola, New York. So it was based upon this. The officers felt he was still harassing him. He actually was harassing him based upon the Facebook postings we submitted. And it was their position that this is not free speech. It's directed as to a specific individual officer. He invited the public to go after this individual officer. And we believe the facts show that this is not political speech. So with respect to that, it's our position that the officers filing the complaint and the judges agreeing that the language appeared harassing, justified him and they're entitled to qualified immunity in this particular situation. What about the questions that Chief Judge Kasman was asking your opposing counsel about communicating this? And we live in a different time now where people don't use snail mail very much. They don't use email all that much. They use Facebook to communicate. They have a website. Is that sufficient under the statute to communicate the annoying material, the harassing material to Captain Leo? I'm sorry, Your Honor. Yes, it is. Why is that? Under People v. Munn, and we discussed this case, which counsel felt wasn't relevant, but that held back in 1999 that the Internet, postings on the Internet were sufficient communications. And that case explained that because the Internet at that time used the telephone for access, that it could be considered communications that would be encompassed under the statute. And since the statute that the officers relied on talked about any form of written communication, it's our position that at the time they filed the charges, they felt that the statute was valid, that there were the written communications through the Internet that went to the public. It wasn't just directed to a small group of people. As this court explained in Barboza, we're not dealing with, for example, a situation where you have a website where you could just post complaints about a government. This man specifically created his own website, published it out to the people, and he did it on the Internet. And this is a written communication that was open to the public, and that's how it came to the attention of the officer. So we feel that the officers believe the statutes were valid. Detective Loxco testified that he has charged numerous people using this particular statute, and the statute has always been upheld. It's very common in domestic situations where people go against each other, and they post how they feel during a divorce proceeding on the Internet. And charges have been brought under the aggravated harassment before it was declared unconstitutional and has held up. So the officers justifiably relied on what they believed was a valid statute based on the communications. So if the court has no other objections, I'll rely on our brief. Okay, thank you. Just a few quick points, your honors. We did distinguish one that uses communicates. It's much broader, and it's not the statute anymore. This wasn't a domestic, this was political. I mean, if you look at the times we live in, everybody's attacking everybody personally. And if you're gonna say that's not part of the First Amendment, boy, we're all in a lot of trouble in the newspapers and everybody on the Internet, because all attacks now are personal in nature, but it doesn't mean they're political. I mean, he had no personal relationship with this gentleman. It was just the only gripe he had was because of his governmental activities. So it's not personal, and it is political. And I do believe that the court erred in relying on post-dated statements. And I was reading a court's decision this morning, and it believed that in more than one place, the court relies on those statements. So I think in that ground alone, a remand is required at least. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision. Here, the next case on the calendar.